UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ROSE ANN STEPHENS,

                Plaintiff,

     -against-
                                          MEMORANDUM
                                          AND ORDER
                                          08-CV-4934(SMG)
ALKEN TOURS, INC. and
PATRICIA LAWRENCE-HAUGHTON,

                Defendants.
-------------------------------------------------------x
*GOLD, S., United States Magistrate Judge*:

## Introduction

Plaintiff, Roseanne Stephens, brings this action against her former employer, Alken Tours, Inc. ("Alken"), and its principal, Patrcia Lawrence-Houghton. Plaintiff alleges that she frequently worked more than forty hours in a week but was not paid overtime. Plaintiff asserts claims under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, and in particular 29 U.S.C. § 207, as well as under parallel New York State law provisions.

The parties consented to reassignment of this action to a magistrate judge for all purposes. Docket Entry 48. The parties agreed to a bench trial, which I held on January 13, 2011. For the reasons stated below, judgment is entered in plaintiff's favor in the amount of $25,379, comprised of $5,733 in FLSA overtime wages due, $5,733 in FLSA liquidated damages, $12,633 in state law overtime wages due, and $1,250 in attorney's fees and costs.

## Facts

The background facts are undisputed. Defendant Alken is a travel agency. The agency is run by defendant Lawrence-Haughton, who has served as its president since 1997. Plaintiff Stephens began working for Alken in or about 1984 and was at all relevant times supervised by

defendant Lawrence-Haughton. Stephens' employment was terminated on September 10, 2008. The reason offered by defendants was that the volume of business in the travel industry had declined. Pl. Ex. 1.

Plaintiff's case included her own testimony and the testimony of two of her friends; her letter of termination, Pl. Ex. 1; and a log reflecting employee starting times from January of 2003 through March of 2004, written in plaintiff's hand and found and produced in discovery by defendants. Pl. Ex. 2. Defendants' case was comprised of the testimony of Lawrence-Haughton and Steven Grandison, Alken's accounting manager. Defendants also introduced an affidavit sworn to by plaintiff during the course of this litigation. Def. Ex. A.

Plaintiff testified that she regularly worked five or six days per week and often remained at work after regular business hours. According to her testimony, plaintiff worked an average of fifty hours per week, but was usually paid for working only forty hours.[1] Plaintiff did acknowledge that she was paid overtime wages about one-third of the time. Plaintiff also acknowledged that she frequently complained to Grandison about being owed overtime, and that Grandison would correct her pay and include overtime wages about one-quarter of the time. At all times relevant to this lawsuit, plaintiff's regular wage was $14.00 per hour.

Defendant Lawrence-Houghton testified that, as far as she knew, plaintiff never worked more than forty hours in a single week. Lawrence-Houghton further testified that, after the World Trade Center was attacked on September 11, 2001, business fell off markedly, and her staff agreed to work four days per week to avoid layoffs. Steven Grandison, who is no longer

---

[1] In her affidavit, plaintiff stated that her "normal work week was at least approximately 60 hours." Def. Ex. A., ¶ 6.

employed by Alken, corroborated Lawrence-Houghton's testimony and stated that plaintiff never worked more than forty hours in a single week and never complained to him that she worked overtime but was not paid for it.

Both plaintiff and Grandison testified that Alken employees punched time cards that Grandison reviewed when preparing payroll checks. In her testimony, Lawrence-Houghton acknowledged that plaintiff's time cards were not retained and therefore could not be produced in discovery or at trial.

## Discussion

*A. Liability*

Under the FLSA, an employer is required to maintain records establishing the hours worked by its employees. 29 U.S.C. § 211(c). When an employer fails to keep records of the hours worked by its employees, a plaintiff may prove her hours by evidence that "show[s] the amount and extent of [her] work as a matter of just and reasonable inference." *Angel v. Queens Blvd. Car Wash*, 2008 WL 111159, at *8 (E.D.N.Y. Jan. 8, 2008), quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946).

I credit plaintiff's testimony that she worked overtime hours on a regular basis but that she was not consistently paid for doing so. I make this decision primarily because the only documentation reflecting plaintiff's hours tends to corroborate her testimony and to refute the testimony of defendant Lawrence-Haughton and defense witness Grandison.

Plaintiff's Exhibit 2 is a log of the times each Alken employee signed in for work at the location where plaintiff reported. The log appears to run from January 23, 2003 to April 1, 2004, with certain pages missing. The log was maintained by plaintiff during her employment, and was

found by defendant Lawrence-Haughton after this suit was brought. Plaintiff would have had little or no reason to fabricate the entries in the log at the time she made them.

At the conclusion of the trial, I granted the parties' request to submit post-trial letter briefs. I asked the parties to review the entries in Exhibit 2 and report on whether they supported either side's version of the facts. Plaintiff's post-trial letter does not include a discussion of the entries in Exhibit 2. Docket Entry 50. Defendants' post-trial letter does include a schedule, derived from Exhibit 2, indicating that plaintiff frequently worked less than five days per week. Docket Entry 51. If accurate, this would appear to support defendants' version of the relevat facts.

However, it appears to me that, with respect to several of the weeks listed, defendants' schedule undercounts the number of days plaintiff worked.[2] For example, defendants state that plaintiff worked between three and five days during the week of August 4, 2003. Exhibit 2 indicates, however, that plaintiff arrived at 8:45 on August 4, at 8:45 again on August 5, at 8:46 on August 6, at 8:45 on August 7, at 8:49 on August 8 and at 8:48 on August 9, for a total of six days worked. Ex. 2 at 46-48. Similarly, defendants report that, from their review of Exhibit 2, it appears that plaintiff worked only three days during the week of September 29; as I read the exhibit, though, plaintiff reported at 8:50 on September 29, September 30, October 1, October 2, October 3, and October 4, again for a total of six days worked. Pl. Ex. 2 at 60-61. There are other similar instances of miscounting by defendants.

---

[2]The document was not carefully photocopied and is difficult to read. I do not infer any intent to mislead the Court from the fact that defendants and I do not read the document the same way.

All told, in a schedule of 63 weeks, I count 17 six-day weeks and 22 five-day weeks. Interpreting the facts in the light most favorable to the defendants, then, plaintiff likely worked overtime hours during at least 39 of the weeks in 2003 and early 2004. Yet defendant Lawrence-Haughton testified that her employees reduced their work week to four days after September 11, 2001, and defense witness Grandison testified that plaintiff never worked more than forty hours in a single week. Thus, the limited documentary evidence available seems to me to be more consistent with plaintiff's version of the facts than the version advanced by defendants, and I therefore find that plaintiff did in fact work overtime hours for which she was not compensated.

B. Damages

In light of the meager documentation provided by the parties, I am left with no choice but to approximate the overtime wages due to plaintiff. As noted above, plaintiff testified at trial that she worked approximately 50 hours per week, or about ten overtime hours per week. It seems reasonable to conclude, though, that plaintiff worked overtime hours only when she worked five or six days during the week. Exhibit 2 indicates that plaintiff worked five or six days during 39 of the 63 weeks listed. I therefore conclude that plaintiff worked ten overtime hours per week during 39 out of every 63 weeks she worked, or 62% of the time. Plaintiff testified that she was paid for overtime about one-third of the time.[3] Accordingly, plaintiff is entitled to recover overtime wages of ten hours per week for 29% (62% minus 33%) of the weeks she worked during the relevant limitations periods.

---

[3]It is not clear whether plaintiff intended this one-third figure to describe the frequency with which she was paid for overtime hours before or after her complaints to Grandison. Because defendants failed to produce any records – not even their cancelled payroll checks, which would have shown how often plaintiff was in fact paid overtime – I conclude that plaintiff was paid overtime for one-third of the weeks she worked *after* her complaints to Grandison.

Plaintiff asserts without contradiction that she worked from December 2006 to October 2008, or 94 weeks, within the FLSA limitations period.  Twenty-nine percent of 94 weeks is 27.3 weeks; ten hours per week for 27.3 weeks is 273 hours; 273 hours at $21 per hour yields $5,733 in FLSA overtime wages owed.  Adding liquidated damages in an equal amount as provided in 29 U.S.C. § 216(b) results in a total FLSA award of $11,466.

Plaintiff also asserts without contradiction that she worked for a total of 208 weeks during the period from December 2002 through December 2006, when state law remedies are available.  Twenty-nine percent of 208 weeks is 60.3 weeks; ten hours per week for 60.3 weeks is 603 hours; 603 hours at $21 per hour yields $12,663 in overtime wages due under state law.

Finally, having prevailed in an action pursuant to the FLSA, plaintiff is entitled to recover her reasonable attorney's fees and costs.  29 U.S.C. § 216(b).  Plaintiff seeks $350 in costs – her filing fee – and $900 in attorney's fees.  The amounts sought are reasonable and will be awarded.

**Conclusion**

For the reasons stated above, the Clerk of the Court is directed to enter judgment in plaintiff's favor in the total amount of $25,379, comprised of $5,733 in FLSA overtime wages due, $5,733 in FLSA liquidated damages, $12,633 in state law overtime wages due, and $1,250 in attorney's fees and costs.

SO ORDERED.
          /s/                          
Steven M. Gold
United States Magistrate Judge

Brooklyn, New York
January 21, 2011

U:\smg current docs\stephens trial.wpd